# In the United States Court of Federal Claims

BID PROTEST
No. 16-1576C
Filed Under Seal: February 2, 2017
Reissued for Publication:  February 15, 2017[*]

| | |
|---|---|
| LIMCO AIREPAIR, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant, )<br><br>v. )<br><br>WALL COLMONOY CORPORATION, )<br><br>Defendant-Intervenor. ) | Post-Award Bid Protest; Judgment upon the Administrative Record, RCFC 52.1; Price Realism Analysis; *Ex Parte* Communication. |

_____

    *W. Brad English*, Counsel of Record, *Jon D. Levin*, Of Counsel, *J. Andrew Watson, III*, Of Counsel, *Brian J. Chapuran*, Of Counsel, Maynard, Cooper, & Gale, P.C., Huntsville, AL, for plaintiff.

    *Sarah Choi*, Trial Attorney, *Scott D. Austin*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC, *Kurt Eberle*, Of Counsel, United States Department of the Air Force, Tinker Air Force Base, OK, for defendant.

    *John R. Tolle*, Attorney of Record, *W. Todd Whey*, Of Counsel, Baker, Cronogue, Tolle & Werfel, LLP, McLean, VA, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on February 2, 2017 (docket entry no. 41), pursuant to the Protective Order entered in this action on December 8, 2016 (docket entry no. 13). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the Protective Order.  The parties filed a joint status report on February 15, 2017, notifying the Court that they do not believe any information should be redacted (docket entry no. 43).  And so, the Court is reissuing its Memorandum Opinion and Order dated February 2, 2017 without redactions.

**<u>MEMORANDUM OPINION AND ORDER</u>**

<u>GRIGGSBY</u>, Judge

**I.     INTRODUCTION**

Plaintiff, Limco Airepair, Inc. ("Limco"), brought this post-award bid protest matter challenging the United States Air Force's ("Air Force") decision to award a contract for the remanufacture of F-16 heat exchangers to Wall Colmonoy Corporation ("WCC").  Limco has moved for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  The government and WCC have also moved for judgment upon the administrative record, pursuant to RCFC 52.1.  For the reasons set forth below, the Court (1) **DENIES** Limco's motion for judgment upon the administrative record; (2) **GRANTS** the government's motion for judgment upon the administrative record; and (3) **GRANTS** WCC's motion for judgment upon the administrative record.

**II.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

**A.     Factual Background**

In this post-award bid protest matter, Limco challenges the Air Force's decision to award a contract for the remanufacture of F-16 heat exchangers ("Contract") to WCC.  *See generally* Am. Compl.  Limco asserts that the Air Force (1) failed to perform a price realism analysis of WCC's proposed price, as was required by the Solicitation, and (2) engaged in *ex parte* communication with WCC, resulting in an unlevel playing field that prejudiced Limco.  *See id.*; Tr. at 7:4-6, 12:17-23.

Limco seeks declaratory and injunctive relief.  Pl. Mot. at 19-20.  Namely, Limco requests that the Court declare the Air Force's award to WCC arbitrary, capricious, an abuse of discretion and contrary to law.  *Id.* at 20.  In addition, Limco requests the Court: (1) enjoin the Air Force from continuing performance under the Contract; (2) require the Air Force to amend

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's amended complaint ("Am. Compl."); the administrative record ("AR"); plaintiff's motion for judgment upon the administrative record ("Pl. Mot."); defendant's cross-motion for judgment upon the administrative record ("Def. Mot."); WCC's cross-motion for judgment upon the administrative record ("Int. Mot."); and the transcript from oral argument ("Tr.").  Except where otherwise noted, the facts recited herein are undisputed.

the Solicitation and to provide the same information regarding performance testing to all offerors; and (3) require the Air Force to perform a price realism analysis of WCC's proposed price and make a new award decision.  *Id*.

### 1.      The Small Business Solicitation

The salient facts in this bid protest matter are undisputed.  On February 29, 2016, the Air Force issued a request for proposals for the remanufacture of F-16 heat exchangers as a small business set-aside (the "Small Business Solicitation").  AR at 497-545; Am. Compl. at ¶ 8.  WCC submitted an offer under the Small Business Solicitation, which included a proposed price of $17,426.84 per unit.  AR at 587-636; Am. Compl. at ¶ 12.  After discussions with the Air Force, WCC reduced its proposed price to $15,950.54.  AR at 644.  During a second round of discussions for the Small Business Solicitation, WCC indicated that performance testing accounted for $1,500 of its proposed price per unit.  *Id*. at 653-54.  On June 20, 2016, the Air Force canceled the Small Business Solicitation because it deemed all of the offers to be too high. *Id*. at 657-58.

### 2.      The Full And Open Solicitation

On June 21, 2016, the Air Force issued a full and open solicitation for the remanufacture of F-16 heat exchangers (the "Solicitation").  AR at 170-220.  The Solicitation contemplates award to the Lowest Price Technically Acceptable offeror.  *Id*. at 214.  With respect to the Air Force's price analysis, the Solicitation provides that:

> 2.3. Factor 2 –Price
>
> Price proposals will be evaluated for (1) completeness, (2) reasonableness, (3) price realism, (4) unbalanced pricing, and (5) Total Evaluated Price. . . .
>
> 2.3.2. Price Reasonableness
>
> The proposed prices will be evaluated for reasonableness . . . . Normally, price reasonableness is established through adequate price competition, but may also be determined through price analysis techniques as described in [Federal Acquisition Regulation] 15.404.
>
> 2.3.3. Price Realism
>
> Proposed prices will be evaluated for price realism . . . . To evaluate price realism, the Government may use one or more of the the [sic] price analysis techniques described in [Federal Acquisition Regulation] 15.404.  The Government may also use other evaluation techniques, as needed.

*Id.* at 219.  In this regard, Federal Acquisition Regulation ("FAR") 15.404 provides that:

> (b) Price analysis for commercial and non-commercial items.
>
> > (2) The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price.  Examples of such techniques include, but are not limited to, the following:
> >
> > > (i) Comparison of proposed prices received in response to the solicitation. Normally, adequate price competition establishes a fair and reasonable price.

48 C.F.R. § 15.404-1.

On June 21, 2016, the Air Force's contracting officer ("Contracting Officer") notified WCC that the Solicitation had been posted.  AR at 222-23.  In response, WCC asked the Contracting Officer whether WCC's interpretation that performance testing was not required under the Solicitation was correct.  *Id.* at 221-22.  The Contracting Officer responded that:

> The contractor is correct, with the one exception that performance testing may be required during an IPE.  Performance testing will not be required for 100%.

*Id.* at 221.

In July 2016, Limco and WCC submitted the only offers in response to the Solicitation. *Id.* at 224-341.  Limco's offer included a proposed price of $13,500.00 per unit, and WCC's offer included a proposed price of $12,974.21 per unit.  *Id.* at 224, 290; Am. Compl. at ¶¶ 27-28.

### 3.  The Air Force's Evaluation And Award Decision

As part of the source selection process for the Solicitation, the Air Force documented its price analyses of offerors' proposed prices in a Proposal Analysis Report ("PAR") and a Source Selection Decision Document ("SSDD").  AR at 344-51.  In the SSDD, the Contracting Officer outlined how the Air Force evaluated WCC's and Limco's offers.[2]  *Id.* at 344-45.  Specifically, the Contracting Officer assessed both proposals under the technical and price evaluation factors. *Id.* at 344-46.  The SSDD provides that both offerors were technically acceptable.  *Id.* at 346.

With respect to price, the Contracting Officer considered Limco's proposed price and WCC's proposed price and deemed both offerors' proposed prices to be "fair and reasonable and

---

[2] In this matter, the Contracting Officer was also the Source Selection Authority.  AR at 346.

balanced based upon competition." *Id*. at 345-46. And so, the Contracting Officer determined that WCC had the lowest priced technically acceptable offer. *Id*. at 346.

In the PAR, the Contracting Officer also evaluated offers under technical and price factors. *See id*. at 347-51. The Contracting Officer deemed both offers technically acceptable. *Id*. at 349-51.

With regard to the price factor, the Contracting Officer stated that the Air Force ranked WCC's proposed price and Limco's proposed price in ascending order based upon the Total Evaluated Price. *Id*. at 348. The PAR further provides that:

> [The] final proposed prices were evaluated against the criteria of reasonableness, realism, and balance. A price analysis was conducted by comparing proposed prices received in response to the solicitation. Per FAR 15.404-1(b)(2)(i), adequate price competition establishes a fair and reasonable price.

*Id*. at 350-51; 48 C.F.R. § 15.404. The Air Force determined WCC had a "fair and reasonable" proposed price and that its offer was technically acceptable. AR at 351. And so, the agency determined that a contract to WCC "would be awardable." *Id*. The Air Force also included the SSDD and the PAR in the agency's request for clearance to award the contract to WCC. *Id*. at 352-65. The Air Force awarded the Contract to WCC on October 28, 2016. *Id*. at 366-416.

### B.    Procedural Background

Limco filed the complaint in this matter on November 28, 2016. *See generally* Compl. On November 30, 2016, WCC filed a motion to intervene. *See generally* Mot. to Intervene. On December 7, 2016, plaintiff filed a motion for a protective order, a motion to seal the complaint, and a motion for a preliminary injunction. *See* Mot. for Protective Order; Mot. to Seal; Pl. Mot. for PI.

On December 7, 2016, the parties participated in an initial telephonic status conference, during which plaintiff's counsel stated that Limco would hold its motion for a preliminary injunction in abeyance and address the motion during briefing on the merits of the case. *See* Scheduling Order, Dec. 7, 2016. On December 7, 2016, the Court issued a Scheduling Order granting WCC's motion to intervene. *See id*. On December 8, 2016, the Court issued a Protective Order. *See generally* Protective Order.

The government filed the administrative record in this matter on December 9, 2016.  *See generally* AR.  On December 13, 2016, plaintiff filed a motion for leave to file a first amended complaint, which the Court granted on the same day.  *See generally* Pl. Mot. for Leave to File; Order, Dec. 13, 2016.  On December 13, 2016, plaintiff filed its first amended complaint.  *See* Am. Compl.

On December 16, 2016, plaintiff filed a motion for judgment upon the administrative record.  *See generally* Pl. Mot.  On December 27, 2016, the government and WCC filed cross-motions for judgment upon the administrative record and responses to plaintiff's motion for judgment upon the administrative record.  *See generally* Def. Mot.; Int. Mot.  On January 3, 2017, Limco filed a response to the cross-motions for judgment upon the administrative record filed by the government and WCC, and a reply in support of its motion for judgment upon the administrative record.  *See generally* Pl. Reply.  On January 9, 2017, the government and WCC filed their replies in support of their cross-motions for judgment upon the administrative record. *See generally* Def. Reply; Int. Reply.

On January 23, 2017, the Court held oral argument on the cross-motions for judgment upon the administrative record.  *See generally* Tr., Jan. 23, 2017.  During oral argument, the Court issued an oral decision denying Limco's motion for judgment upon the administrative record and granting the government's and WCC's motions for judgment upon the administrative record.  The rationale for the Court's decision is set forth below.

## III.    LEGAL STANDARDS

### A.  Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  This Court reviews agency actions in bid protest matters under the "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the Administrative Procedure Act standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or

procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In this regard, the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id.* at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).  In addition, the Court should not substitute its judgment for that of the agency.  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "'[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential."  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ."  *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted).  But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious."  *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

### B.  Judgment Upon The Administrative Record

Generally, Rule 52.1 limits this Court's review of an agency's procurement decision to the administrative record.  RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence.").  And so, unlike a summary judgment motion brought pursuant to Rule 56, "the existence of genuine issues of material fact does not preclude judgment upon the administrative record" under Rule 52.1.  *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56.  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### C.  Injunctive Relief

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ."  28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037.  In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  However, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief.  *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## IV.    LEGAL ANALYSIS

In its motion for judgment upon the administrative record, Limco asserts that the Air Force failed to perform a price realism analysis of WCC's proposed price, as was required by the Solicitation, and that the Air Force engaged in *ex parte* communication with WCC, resulting in an unlevel playing field that prejudiced Limco.  *See generally* Am. Compl.; Pl. Mot.  The government and WCC counter in their cross-motions for judgment upon the administrative record that the Air Force performed an appropriate price realism analysis of WCC's proposal and that the Air Force's *ex parte* communication with WCC did not prejudice Limco.  *See generally* Def. Mot.; Int. Mot.

For the reasons discussed below, the administrative record in this matter shows that the Air Force conducted an appropriate price realism analysis of WCC's proposal and that the Air Force's *ex parte* communication did not prejudice Limco.  And so, the Court denies Limco's motion for judgment upon the administrative record and grants the government's and WCC's cross-motions for judgment upon the administrative record.

### A.    The Air Force Conducted A Price Realism
### Analysis In Accordance With The Solicitation

The administrative record shows that the Air Force conducted a price realism analysis of WCC's proposed price and that this analysis was in accordance with the terms of the Solicitation

and the FAR.  *See* AR at 219, 344-51; 48 C.F.R. § 15.404-1.  In determining whether the Air Force conducted a proper price realism analysis, the Court affords deference to the Air Force's price realism analysis and recognizes that the extent of an agency's price realism analysis can vary, and generally is within the discretion of the agency.  *Int'l Outsourcing Servs. v. United States*, 69 Fed. Cl. 40, 48 (2005) (*citing Labat-Anderson, Inc. v. United States*, 50 Fed. Cl. 99, 106 (2001)); *FCN, Inc. v. United States*, 115 Fed. Cl. 335, 375 (2014) (("Unless the agency commits itself to a particular methodology in a solicitation, the nature and extent of a price realism analysis, as well as an assessment of potential risk associated with a proposed price, are generally within the sound exercise of the agency's discretion.") (citations omitted)).  Applying this legal framework to the matter, the record evidence shows that the Air Force conducted a proper price realism analysis here.

The Solicitation contemplates a price realism analysis that utilizes one of the techniques described in the FAR.  Specifically, the Solicitation states that:

> Proposed prices will be evaluated for price realism.  To be realistic, the proposed price must demonstrate an adequate understanding of the requirement, and must ensure the price does not pose a risk to performance.

AR at 219.  The Solicitation also provides that, to evaluate price realism, the Air Force could use one or more of the price analysis techniques described in FAR 15.404, or "other evaluation techniques, as needed."  *Id.*  In this regard, FAR 15.404-1(b)(2) states, in relevant part, that:

> The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price.  Examples of such techniques include, but are not limited to . . . Comparison of proposed prices received in response to the solicitation.  Normally, adequate price competition establishes a fair and reasonable price (see 15.403-1(c)(1)(i)).

48 C.F.R. § 15.404-1(b)(2).  And so, the plain language of the Solicitation permits the Air Force to use any of the techniques set forth in FAR 15.404 to perform the price realism analysis.

The evidentiary record also demonstrates that the Air Force conducted a price realism analysis in accordance with FAR 15.404 and the Solicitation.  The PAR describes the steps that the Air Force undertook to perform the price realism analysis.  Specifically, the PAR provides that the Air Force ranked WCC's and Limco's proposed prices in ascending order based upon the Total Evaluated Price.  AR at 348.  The PAR further provides that:

> [F]inal proposed prices were evaluated against the criteria of reasonableness, realism, and balance.  A price analysis was conducted by comparing proposed prices received in response to the solicitation.

*Id*. at 350.  In addition, the PAR provides that "[p]er FAR 15.404-1(b)(2)(i), adequate price competition establishes a fair and reasonable price."  *Id*. at 350-51.

The SSDD also documents the Air Force's price realism analysis of WCC's proposed price.  The SSDD provides that the Contracting Officer considered Limco's and WCC's proposed prices and deemed both prices "fair and reasonable and balanced based upon competition."  *Id*. at 344-46.  And so, the record evidence demonstrates that the Air Force performed a proper price realism analysis by both comparing the prices proposed by the offerors in this matter and establishing that there was adequate price competition.

The record evidence also demonstrates that the Air Force documented its price realism analysis.  As the United States Court of Appeals for the Federal Circuit has held, "[c]ontracting officers are not obligated by the [Administrative Procedure Act] to provide written explanations for their actions."  *Impresa*, 238 F.3d at 1337; *see also* Tr. at 11:9-15.  Nonetheless, the Contracting Officer documented the Air Force's price realism analysis in this case.  *See* AR at 344-53.  As discussed above, the administrative record shows that the price realism analysis was documented in the agency's PAR and SSDD and this analysis is also incorporated into the Air Force's request for clearance.  *Id*.  And so, the evidentiary record makes clear that the Air Force documented its price realism analysis for the Solicitation.

It is also important to note that Limco's argument that the Court should set aside the Air Force's award decision, because the government did not question the reduction in WCC's proposed price during the Solicitation, is unavailing.  At bottom, Limco is asking the Court to require the Air Force to perform a price realism analysis that Limco believes is appropriate under the circumstances of this case.  But, it is not the role of the Court to substitute its own judgment for the Air Force's regarding the technique that should be employed to perform the price realism analysis.  *Cincom Sys., Inc.*, 37 Fed. Cl. at 672 (holding that the Court should not substitute its judgment for the agency's judgment).  Rather, the Court affords deference to the Air Force's price realism analysis and looks only to see whether the price realism analysis complies with the methodology called for in the Solicitation.  *Int'l Outsourcing Servs.*, 69 Fed. Cl. at 47-48.  The

record evidence makes clear that it does in this case.  And so, the Court will not disturb the Air Force's decision regarding the price realism analysis.

In sum, the record evidence demonstrates that the Air Force conducted a price realism analysis in accordance with the Solicitation and the FAR, and that such analysis was properly documented by the Air Force.[3]  And so, the Court must deny this claim.

### B.  Limco Was Not Prejudiced By The Air Force's *Ex Parte* Communication With WCC

Limco's claim that the Air Force's *ex parte* communication with WCC resulted in unequal treatment and an unlevel playing field for Limco is also belied by the administrative record.  In this regard, there is no dispute the Air Force engaged in an *ex parte* communication with WCC regarding performance testing.  *See* AR at 221-22; Pl. Mot. at 14-17; Def. Mot. at 11, 21-22; Int. Mot. at 4-5.  But, even if this communication was improper, Limco has not demonstrated how the communication significantly prejudiced Limco.  *See generally* Pl. Mot.; Pl. Reply.

To demonstrate such prejudice, Limco must show that it would have had a "substantial chance" of winning the award but for the *ex parte* communication.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005) (citations omitted).  In its filings, Limco states that it "might have adjusted its price" if the Air Force told Limco that performance testing was not required.  Pl. Mot. at 16-17; *see also* Tr. at 13:9-14, 19-20.  But, Limco does not state that its price was based upon a misunderstanding about the requirement for performance testing.  *See generally* Pl. Mot.; Pl. Reply.  Given this, Limco has not shown how the Air Force's communication with WCC on this topic impacted Limco's proposed price.  *See* Pl. Mot.; Pl. Reply.  And so, Limco has simply not demonstrated that it would have had a "substantial chance" of winning the award but for this *ex parte* communication.

### C.  Injunctive Relief Is Inappropriate

Given the deficiencies in Limco's bid protest claims discussed above, Limco also fails to demonstrate that it is entitled to the injunctive relief that it seeks in this matter.  As discussed

---

[3] Because the Court finds the Air Force conducted a price realism analysis, the Court need not reach the issue of prejudice with respect to this issue.

above, Limco's challenge to the price realism analysis for the Solicitation is not supported by the record evidence.  Limco has also failed to demonstrate how the Air Force's *ex parte* communication with WCC has prejudiced Limco.  And so, where, as is the case here, the evidence demonstrates that a protestor will not succeed upon the merits of its claims, Limco cannot prevail upon its claim for injunctive relief.  *Cf. Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)) ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction" or a temporary restraining order); *Nat'l Steel Car, Ltd.*, 357 F.3d at 1325 (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).

## V.       CONCLUSION

In sum, the record evidence in this post-award bid protest matter shows that the Air Force conducted a reasonable price realism analysis that was in accordance with the terms of the Solicitation and the FAR.  AR at 219, 344-51; 48 C.F.R. § 15.404.  The record evidence also shows that Limco has not demonstrated that it has been prejudiced because of the acknowledged *ex parte* communication between the Air Force and WCC regarding the absence of a requirement to conduct performance testing in the Solicitation.

And so, for the foregoing reasons, the Court:

1. **DENIES** plaintiff's motion for judgment upon the administrative record;
2. **GRANTS** the government's motion for judgment upon the administrative record; and
3. **GRANTS** WCC's motions for judgment upon the administrative record.

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on December 8, 2016.  This Memorandum Opinion and Order shall therefore be filed under seal. The parties shall review the Memorandum Opinion and Order to determine whether, in their

view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

The Court hereby **ORDERS** the parties to **FILE**, by **February 16, 2017**, a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge